IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ARIST MEDICAL SCIENCES UNIVERSITY, <br><br> Plaintiff, <br><br> v. <br><br> TRIPLE-S PROPIEDAD, INC., et al., <br><br> Defendants. | CIVIL NO.: 19-1891 (MEL) |

**OPINION AND ORDER**

## I. Procedural Background

On September 18, 2019, Arist Medical Sciences University n/k/a Tiber Health Public Benefit Corporation ("Plaintiff") filed a complaint against Triple-S Propiedad, Inc. ("TSP") and Triple-S Management Corporation ("TSM"), (collectively "Defendants"). ECF No. 1. In the complaint, Plaintiff alleges that it was issued an insurance policy by Defendants and that Defendants breached their contractual obligations under said policy by refusing to pay for losses suffered due to Hurricane María. Id. at 26-28. Plaintiff also alleges in the complaint that Defendants breached their duty of good faith and fair dealing and acted with obstinacy. Id. at 29-39. Further, Plaintiff requests the payment of interest on the amounts claimed in the complaint in light of Defendants' failure to pay the insurance claim. Id. at 40-41.

Pending before the court is TSM's motion requesting dismissal of the complaint under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). ECF No. 40. On March 3, 2021, Plaintiff filed a "motion to strike, or, in the alternative, response and memorandum of law in opposition" to TSM's motion to dismiss. ECF No. 42. On March 17, 2021, Plaintiff filed a supplemental response to TSM's motion to dismiss the complaint. ECF No. 46. Said

supplemental response (ECF No. 46) is NOTED. On March 29, 2021, TSM filed a reply to Plaintiff's opposition to the motion to dismiss. ECF No. 50.

**II.    Legal Standard**

In the motion to dismiss, TSM argues that the complaint should be dismissed pursuant to Rule 12(b)(6). ECF No. 40. In response, Plaintiff contends that TSM's Rule 12(b)(6) motion to dismiss should be stricken from the record as untimely because TSM answered the complaint. ECF No. 42, at 2-3, 7. In its reply, TSM argues that it raised several affirmative defenses in its answer to the complaint which included, among others, failure to state a claim upon which relief can be granted, TSM is not an insurance company, TSM did not issue a policy to Plaintiff, and TSM has no contractual relation with Plaintiff. ECF No. 50, at 2; ECF No. 17, at 29. Thus, TSM argues that its motion to dismiss should be considered as a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) ("Rule 12(c)") and that Plaintiff's request that the motion to dismiss be stricken should be denied. ECF No. 50, at 2-5.

"A motion pursuant to Rule 12(b)(6) 'must be made before pleading if a responsive pleading is allowed.'" Integrand Assurance Co. v. Puma Energy Caribe, LLC, 463 F. Supp. 3d 291, 295 (D.P.R. 2020) (quoting Fed. R. Civ. P. 12(b)). "After the pleadings are closed, a party must move pursuant to Rule 12(c) instead of Rule (12)(b)(6)." Id. Thus, Plaintiff's assertion that TSM's Rule 12(b)(6) motion to dismiss is untimely has merit. However, because TSM included the defenses raised in the motion to dismiss in the answer to the complaint, the motion to dismiss will be considered as a motion for judgment on the pleadings pursuant to Rule 12(c). See Aponte-Torres v. Univ. of Puerto Rico, 445 F.3d 50, 54 (1st Cir. 2006) ("Because the defendants previously had answered the amended complaint, the district court appropriately treated their motion to dismiss as one for judgment on the pleadings . . . [t]his conversion does not affect our

2

analysis inasmuch as the two motions are ordinarily accorded much the same treatment."); Monell v. Best Pers. Sys., Inc., 127 F. Supp. 2d 48, 50 (D.P.R. 2000) ("the court can treat an untimely motion to dismiss under Rule 12(b)(6) as a motion for judgment on the pleadings without affecting the outcome of the motion since 'the court will apply the same standards for granting the appropriate relief as it would have employed had the motion been brought under [Rule 12(b)(6)].'" (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1367, at 515)).

Pursuant to Federal Rule of Civil Procedure 12(h), a party may raise the defense of "failure to state a claim upon which relief can be granted" by a motion under Rule 12(c). Fed. R. Civ. P. 12(h). Rule 12(c) provides "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "A motion under Rule 12(c) is treated much the same as a motion under Rule 12(b)(6)." López v. Ortiz, Civ. No. 13-1166, 2015 WL 1470566, at *5 (D.P.R. Mar. 31, 2015); Asociación De Subscripción Conjunta Del Seguro De Responsabilidad Obligatorio v. Flores Galarza, 484 F.3d 1, 22 (1st Cir. 2007) ("The standard for evaluating a Rule 12(c) motion ... is essentially the same as that for deciding a Rule 12(b)(6) motion."). However, a "Rule 12(c) motion implicates the pleadings as a whole." Curran v. Cousins, 509 F.3d 36, 43 (1st Cir. 2007).

"[T]o survive a Rule 12(c) motion a complaint 'must contain factual allegations that raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true.'" MVM Inc. v. Rodríguez, 568 F. Supp. 2d 158, 167 (D.P.R. 2008) (quoting Perez–Acevedo v. Rivero–Cubano, 520 F.3d 26, 29 (1st Cir. 2008)). "In deciding a motion under Rule 12(c) for failure to state a claim, '[w]e view the facts contained in the pleadings in the light most flattering to the nonmovants ... and draw all reasonable inferences therefrom in their

favor.'" De-Jesús-Rivera v. Abbott Labs., Civ. No. 10-1144, 2010 WL 2737129, at *1 (D.P.R. 2010) (quoting Aponte–Torres, 445 F.3d at 54)); Torres-Santiago v. Diaz-Casiano, 708 F. Supp. 2d 178, 179 (D.P.R. 2009) ("a court should accept well-pled factual allegations in the complaint as true and make all reasonable inferences in the plaintiff's favor.") (citations omitted)). "But mere legal conclusions 'are not entitled to the assumption of truth.'" De-Jesús-Rivera, 2010 WL 2737129, at *1 (citing Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009)). "The complaint must allege enough factual content to nudge a claim across the line from conceivable to plausible." Camilo v. Nieves, Civ. No. 10-2150, 2013 WL 6632801, at *6 (D.P.R. Dec. 16, 2013) (citing Ashcroft, 556 U.S. at 680).

"In reviewing a motion under Rule 12(c), as in reviewing a Rule 12(b)(6) motion, [the court] may consider 'documents the authenticity of which are not disputed by the parties; ... documents central to plaintiffs' claim; [and] documents sufficiently referred to in the complaint.'" Curran, 509 F.3d at 44 (quoting Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)); Costas-Elena v. Municipality of San Juan, 714 F. Supp. 2d 263, 267 fn.3 (D.P.R. 2010).

**III.   Factual Allegations in the Complaint**

    **A. The Insurance Policy**

Plaintiff operates Ponce Health Sciences University ("PHSU"), a medical school campus located in Ponce, Puerto Rico, which includes an educational institution, a research facility, and a healthcare center. The PHSU campus consists of fifteen buildings designated A through O, as well as three warehouses designated 7, 7A, and 7B in which it operates the medical school, research activities, and healthcare center. The buildings are owned by Plaintiff. In connection with the operation of the PHSU campus, Plaintiff also maintained business personal property,

including, but not limited to, furniture, fixtures, electronics, medical and lab equipment, and supplies.

On or about June 30, 2017, Triple-S[1] issued commercial policy number 30-CP-81085314, effective from June 30, 2017 through June 30, 2018, to Plaintiff (the "Policy"). The named insured under the policy is Arist Medical Sciences University. In August 2017, Plaintiff filed a certificate of amendment with the Puerto Rico Secretary of State changing its name to Tiber Health Public Benefit Corporation. A general change endorsement to the Policy, effective September 18, 2018, acknowledges the name change of the named insured.

The Policy provided coverage for "direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss." ECF No. 1, at 4, ¶ 22. Pursuant to the Policy, "Covered Property" includes Buildings A through O and other structures and property located in said buildings. "Covered Cause of Loss" includes windstorms and water damage under the Policy. The Policy also provided coverage for lost business income that is due to the necessary suspension of operations as a result of direct physical loss of or damage to property at premises which are described in the Declarations. The Policy also provided coverage for "Extra Expenses" which refer to necessary expenses incurred by Plaintiff during the period of restoration that would not have had to been incurred if there had been no direct physical loss or damage to property resulting from a Covered Cause of Loss and which are incurred to avoid or minimize the suspension of business.

On September 20, 2017, Hurricane María struck Puerto Rico as a Category 4 hurricane and caused widespread damage to the island. During this time, Plaintiff's buildings located on the property suffered direct physical loss as a result of the windstorm. Additionally, roofs and

---

[1] Throughout the complaint, Plaintiff alleges that it was issued a property insurance policy by "Triple-S" which it uses to refer to TSP and TSM collectively. ECF No. 1, at 1.

exterior walls of the buildings were damaged by the windstorm and allowed water infiltration into the interiors of the buildings damaging business personal property. Plaintiff also suffered loss of business income as a result of the damages to the buildings and business personal property, which forced the suspension of business activities. To date, Plaintiff alleges it has suffered the following damages: (1) building claim: $5,827,076 plus hurricane supply and demand premiums; (2) building personal property claim: $2,370,448.43; and (3) business interruption claim (and extra expenses): $10,264,741.

Plaintiff alleges that it "timely and properly put Triple-S on notice of its claims for the losses sustained to its buildings, business personal property, and business income." ECF No. 1, at 7, ¶ 41. Plaintiff also alleges "that the policy premiums were fully paid and that the Policy was in full force and effect at the time of the loss." Id. at 7, ¶ 43. It is also alleged by Plaintiffs that "Triple-S has repeatedly failed to reply to even the most basic communications, requiring the [Plaintiff] to repeatedly reach out to multiple individuals at Triple-S to obtain a response and/or action on the part of Triple-S or its agents" and that "Triple-S has failed to pay all of the losses suffered by [Plaintiff] which are covered under the Policy." Id. at 7, ¶¶ 44, 47. Furthermore, Plaintiff alleges that "TSM is the parent company of its wholly owned subsidiary, TSP, and, upon information and belief, played a role in the claims handling and adjusting practices of TSP, including the handling of claims that arose as a result of Hurricane María." Id. at 2, ¶ 5.

**B. The Building Damages Claim**

Plaintiff hired M. Miller & Son, LLC, ("MMS"), a public adjusting firm, to manage its insurance claims. On November 30, 2017, MMS emailed the adjuster assigned by Triple-S to manage Plaintiff's claims, Ms. Miriam Negrón ("Ms. Negrón"), requesting a meeting regarding an advance payment of benefits. No response was received. On March 14, 2018, Triple-S

advised that it had assigned an inspector, Mr. Omar Álvarez ("Mr. Álvarez") of Property Specs, to evaluate Plaintiff's building damages claim. After MMS contacted Mr. Álvarez, he advised that there was an error because he is not engaged in inspecting commercial properties. Triple-S assigned a new expert, Mr. Pedro Nieves Colón ("Mr. Nieves") from ECZ Group, and an inspection was set for March 22, 2018. On April 19, 2018, a $500,000 advance was approved, rather than the $2,500,000 that was requested.

On June 1, 2018, MMS called the claims department of Triple-S to obtain the status of the damages report and received information that the ECZ Group report was completed and sent to Adjusters Inc. (external Triple-S adjusters) for review and would be sent for review/approval by Ms. Negrón before June 5, 2018. On June 6, 2018, due to the lack of response from Triple-S, MMS filed an investigation with the Office of the Commissioner of Insurance of Puerto Rico ("OCI") relating to the delay by Triple-S in submitting an estimate of damages after the inspection had occurred on March 22, 2018.

On June 14, 2018, Plaintiff received a response from Triple-S's legal representation, Mr. Pedro J. Reyero ("Mr. Reyero"), regarding the investigation requested through OCI, where Triple-S stated that the claim in question is "complex and substantial, with different properties components" ... "Given the complexity of the claim, where the report from the assigned engineer on the property inspection is still pending, Triple-S is not yet in a position to make the adjustment. Once Triple-S receives the final report, Triple-S would be in a position to make the adjustment and settle the claim with the public adjuster, representative of the insured." Id. at 12, ¶ 80.

On July 13, 2018, Plaintiff's insurance broker Mr. Ricardo Ramos ("Mr. Ramos") emailed Triple-S President, Mr. José Del Amo ("Mr. Del Amo"), and Triple-S Claims Vice

President, Mr. Enrique Polanco ("Mr. Polanco"), requesting an urgent meeting about the delay in the claim and the lack of communication from the Triple-S adjusters. Mr. Polanco responded that Triple-S would assign a new engineer to start again with the analysis of the claim submitted by Plaintiff and perform the corresponding inspections.

On July 13, 2018, Triple-S assigned yet a new engineer to initiate the process of inspecting the buildings for the building claim and issuing a report. On July 26, 2018, engineer Mr. Armando Cora ("Mr. Cora") contacted MMS to advise that he was the new expert hired by Triple-S in charge of the building claim. On May 13, 2019, Ms. Negrón informed that the building claim estimate prepared by Mr. Cora identified damages less than the amount of partial payments already made to Plaintiff. Ms. Negrón did not provide any details regarding the damages. Plaintiff alleges that the building damages claim remains unresolved.

### C. Business Personal Property Claim

On February 28, 2019, MMS provided Triple-S through its expert, Mr. Luis Esquilín ("Mr. Esquilín"), a comprehensive inventory of damaged personal property for each building that sustained damage to its contents as well as supporting documentation. A final inspection of the buildings to review the contents occurred on or about May 20, 2019 through May 23, 2019. At that time, TSP's expert, Mr. Esquilín, demanded to see every piece of damaged personal property being claimed as part of the claim. Plaintiff alleges that the building personal property claim remains unresolved.

### D. Business Interruption Claim

On October 9, 2018, MMS shared with Triple-S, through Ms. Negrón and Mr. Polanco, a comprehensive business income loss evaluation report prepared by CPA Mr. Carlos Iglesias ("Mr. Iglesias") of Soria LLC. On October 10, 2018, MMS emailed the business income loss

evaluation report to Triple-S's adjuster, Mr. Luis Osorio ("Mr. Osorio"). Mr. Osorio provided MMS with the name and contact information of Mr. Luis Carranza ("Mr. Carranza"), the CPA assigned by Triple-S to handle the business interruption claim. On November 2, 2018, Mr. Iglesias provided Mr. Carranza with the business income loss evaluation report and supporting documentation. On November 8, 2018, Mr. Carranza confirmed receipt of the report and supporting documents and at the same time requested additional documents. After providing additional information and documentation to Mr. Carranza as well as a supplemental report showing that the total loss income suffered by Plaintiff was more than $10,000,000, in June 2019, Triple-S advised Plaintiff of its position that it suffered no damages related to its business interruption claim. Plaintiff alleges that the business interruption claim remains unresolved.

## IV.     Legal Analysis

TSM argues that the claims against it should be dismissed because it did not issue the Policy and a parent corporation is not automatically liable for the acts of its subsidiary. ECF No. 40, at 1-2. Plaintiff, on the other hand, contends that "a parent company can be held liable for the acts of its subsidiary, particularly when there is involvement by the parent company." ECF No. 42, at 5. Plaintiff further contends that the corporate veil may be pierced when the corporate form would otherwise be misused to accomplish certain wrongful purposes and that an alter ego can be bound by the insurance agreement and by the Insurance Code. Id.

"Insurance, as defined by the Puerto Rico Insurance Code, 'is a contract whereby one undertakes to indemnify another, or to pay or provide a specified or ascertainable benefit upon determinable contingencies therein foreseen.'"[2] Metlife Capital Corp. v. Westchester Fire Ins. Co., 224 F. Supp. 2d 374, 392 (D.P.R. 2002) (citing 26 L.P.R.A. § 102). "Under Puerto Rico

---

[2] "Under Puerto Rico law, the Insurance Code of Puerto Rico, 26 L.P.R.A. §§ 101, et seq., controls the interpretation of insurance contracts." Sylva v. Culebra Dive Shop, 389 F. Supp. 2d 189, 203 (D.P.R. 2005).

law, a contract has three elements: consent, a definitive (and legal) object, and consideration." Citibank Global Markets, Inc. v. Rodríguez Santana, 573 F.3d 17, 24 (1st Cir. 2009) (citing 31 L.P.R.A. § 3391)). "It has been well established that a contract can only bind the contracting parties." Casiano Meléndez v. Municipality of San Juan, Civ. No. 13–1843, 2014 WL 6983399, at *4 (D.P.R. Dec. 10, 2014); see Pérez Sánchez v. Advisors Mortgage Investors, Inc., 130 D.P.R. 530 (P.R. 1992) ("'Actions *ex contractu* . . . can only be prosecuted by either party to the contract against the other.' [...] The general rule is that a contract is irrelevant as to a third person because it simply regulates the contractual relations between the executing parties and does not even affect the third party." (quoting Dennis, Metro Invs. v. City Fed. Savs., 121 D.P.R. 197, 211 (P.R. 1988)); 31 L.P.R.A. § 3374 ("Contracts shall only be valid between the parties who execute them and their heirs ...").

Despite Plaintiff's allegations in the complaint that it was issued the Policy by Triple-S, the Policy reveals that it was issued by TSP in favor of Plaintiff.[3] See ECF Nos. 58-1, 58-2, 58-3, 58-4, 58-5, 58-6. Plaintiff has not cited to any portion of the Policy indicating that TSM is a party to said contract. Therefore, Plaintiff's breach of contract claim against TSM under the theory that TSM is a party to the contract cannot be sustained. As a non-party, TSM does not have any contractual obligations under the Policy. See WM Capital Partners 53, LLC v. Barreras Inc., 373 F. Supp. 3d 350, 363 (D.P.R. 2019) ("of course, as a general proposition, a contract cannot bind a non-party."); Dantlzer, Inc. v. Lamas-Besos, Civ. No. 10-1004, 2010 WL 2572618, at *3 (D.P.R. June 22, 2010) ("[i]n Puerto Rico, contracts are generally only valid between the parties who execute them, and actions arising out of a contract can be prosecuted only by one contracting party against the other.") (citations omitted).

---

[3] The Policy was referred to in the complaint, and thus, may be considered on a motion for judgment on the pleadings. ECF No. 1, at 3-4. See Curran v. Cousins, 509 F.3d 36, 43 (1st Cir. 2007).

Plaintiff, however, argues that TSM can still be held liable in the case at bar because it is the alter ego of TSP. ECF No. 46, at 7. "[I]t is hornbook law that a corporate entity which is also the principal or the parent company of a subsidiary is not automatically liable for the acts of the subsidiary." Puerto Rico Electric Power Auth. v. Vitol, Inc., Civ. No. 09-2242, 2015 WL 13547856, at *14 (D.P.R. Aug. 26, 2015). "Under Puerto Rico law, there is a presumption that a corporate entity is separate from its controlling entity." Milan v. Centennial Communications Corp., 500 F. Supp. 2d 14, 26 (D.P.R. 2007). "However, a plaintiff may pierce this corporate veil by presenting evidence showing that 'the corporation is being used to sanction fraud, provide injustice, evade obligations, defeat public policy, justify inequity, protect fraud or defend crime.'" Rivera v. Reed, Civ. No. 09-1160, 2010 WL 683406, at *3 (D.P.R. Feb. 22, 2010) (citing Colón v. Rinaldi, Civ. No. 01-1571, 2006 WL 3421862 at *6 (D.P.R. Nov. 28, 2006)). "Under Puerto Rico law, the requirement for piercing the corporate veil is that 'strong and robust evidence' be produced showing the parent to have that degree of control over the subsidiary as to render the latter a mere shell for the former." Escude Cruz v. Ortho Pharm. Corp., 619 F.2d 902, 905 (1st Cir. 1980).

"This court has recognized a number of factors identified by the First Circuit that must be assessed in considering whether there has been corporate misuse: (1) whether there has been inadequate capitalization in light of the purposes for which the corporation was organized; (2) extensive or pervasive control by the shareholder or shareholders; (3) intermingling of the corporation's properties or accounts with those of its owner; (4) a failure to observe corporate formalities and separateness; (5) siphoning of funds from the corporation; (6) an absence of corporate records; and (7) non-functioning officers or directors." Rivera, 2010 WL 683406, at *2 (citing Velázquez v. P.D.I. Enterprises, Inc., 141 F. Supp. 2d 189, 193 (D.P.R 1999) and Town

11

of Brookline v. Gorsuch, 667 F.2d 215, 221 (1st Cir. 1981)); see De Castro v. Sanifill, Inc., 198 F.3d 282, 284 (1st Cir. 1999). "Furthermore, the Puerto Rico Supreme Court has adopted a similar analysis in holding that 'a corporation is the alter ego or business conduit of its stockholders when there is such unity of interest and ownership that ... the corporation actually is not a separate and independent entity.'" Rivera, 2010 WL 683406, at *2 (quoting D.A.C.O. v. Alturas Fl. Dev. Corp., 132 D.P.R. 905 (P.R. 1993)). "The burden to pierce the corporate veil lies on the party seeking to pierce the veil." Milan, 500 F. Supp. 2d at 26.

In its supplemental response, Plaintiff argues that,

> TSP is the wholly owned subsidiary of TSM. Upon information and belief, TSM and TSP file a consolidated earnings statement and TSM financially supports TSP. In its 10-K Annual Report from March 2019 and in reporting its Third Quarter 2018 results, TSM disclosed that it provided a capital infusion to TSP as a result of the excessive loss due to Hurricane María, thereby substantiating that TSM financially backs TSP in the adjustment of property and casualty claims.

ECF No. 46 at 4. Plaintiff further argues that TSM markets itself on its website as an insurance company. Id. It is also claimed by Plaintiff that "the discovery process will reveal more marketing and other information showing that the finances of TSM and TSP are intertwined, and that the marketing of both companies will show that they were marketed to the public, including Plaintiff, as one company." Id. at 4-5. Plaintiff also claims in its motion in compliance that Ms. Negrón was the only property claims adjuster at TSP prior to Hurricane María. ECF No. 58, at 2. Thus, Plaintiff argues that discovery is the proper forum to develop these claims and that TSM's assertion that it cannot be liable for the actions of TSP is unfounded. ECF No. 46, at 6.

In its reply, TSM argues that "Plaintiff attempts to survive our Motion to Dismiss by stating several facts that clearly were not alleged in its Complaint." ECF No. 50, at 5. TSM also argues that it cannot be held liable because "Plaintiff did not allege in the complaint that TSM is

12

using TSP to sanction fraud, provide injustice, evade obligations, defeat public policy, justify inequity, protect fraud or defend crime." Id. at 8.

As previously stated, "a Rule 12(c) motion must be filed at the close of pleadings, and must be based solely on the factual allegations in the complaint and answer." NEPSK, Inc. v. Town of Houlton, 283 F.3d 1, 8 (1st Cir. 2002). Thus, at this stage, the court's review is limited to the allegations in the pleadings as well as any documents sufficiently referred to in the complaint. See Curran v. Cousins, 509 F.3d 36, 43-44 (1st Cir. 2007). Plaintiff's allegations that TSP and TSM filed consolidated earnings statements, TSM financially supports TSP, TSM markets itself as an insurance company, and that TSP employed only one property claims adjuster prior to Hurricane María were not included in the complaint. Therefore, these allegations will be disregarded because they cannot be considered on a motion for judgment on the pleadings or in a response to said motion.

In paragraph five of the complaint, Plaintiff alleges that "TSM is the parent company of its wholly owned subsidiary, TSP, and, upon information and belief, played a role in the claims handling and adjusting practices of TSP, including the handling of claims that arose as a result of Hurricane María." ECF No. 1, at 2, ¶ 5. Plaintiff's allegation in the complaint that TSP is a wholly owned subsidiary of TSM is not enough to hold TSM liable as the parent company. See Hernández-Torres v. Intercontinental Trading, Ltd., Civ. No. 94-1057, 1994 WL 752591, at *3 (D.P.R. Dec. 22, 1994) ("The fact that [a subsidiary] may be 'wholly-owned' by [a parent company] is not in and of itself enough to hold the parent company liable for the subsidiary's actions."); Ramírez De Arellano v. Colloides Naturels Intern., 236 F.R.D. 83, 88 (D.P.R. 2006) ("Plaintiff may not depend on the parent-subsidiary relationship *per se* to pierce a corporate veil.").

Furthermore, the allegation that TSM played a role in the claims handling and adjusting practices of TSP does not necessarily give rise to an inference that TSM exerted a "degree of control over [TSP] as to render the latter a mere shell for the former." See Escude Cruz, 619 F.2d at 905. "[I]n the context of a parent-subsidiary relationship, a certain degree of control over the subsidiary is merely an incident to the full ownership of the subsidiary. The First Circuit has made clear that this fact 'is insufficient, without more, to justify ignoring the separate corporate entities.'" PayPhone LLC v. Brooks Fiber Commc'n of Rhode Island, 126 F. Supp. 2d 175, 182 (D.R.I. 2001) (quoting Topp v. CompAir Inc., 814 F. 2d 830, 837 (1st Cir. 1987)); Alvarado-Morales v. Digital Equip. Corp., 669 F. Supp. 1173, 1182 (D.P.R. 1987) ("The mere fact that a parent corporation may assert authority to approve or reject plans of its subsidiary does not establish that the parent plans, implements or in any way controls the subsidiary's policies."). In the case at hand, paragraph five of the complaint does not define the nature and extent of TSM's "role" in the claims handling and adjusting practices of TSP. Furthermore, paragraph five of the complaint does not clarify whether TSM played a role in TSP's claims handling and adjusting practices in this particular case.

However, Plaintiff's argument that TSP is the alter ego of TSM is not resting exclusively on the allegations in paragraph five of the complaint. As stated earlier, "Triple-S" is defined in the complaint as TSP and TSM collectively. ECF No. 1, at 1. Hence, it follows from a literal reading of the complaint that the term "Triple-S" means both TSP and TSM and it would be improper to construe "Triple-S" as referring to only TSP in the complaint. Therefore, being observant of the definition of "Triple-S" in the complaint, Plaintiff has set forth specific allegations giving rise to a reasonable inference that the corporate structures of TSP and TSM were disregarded.

For example, the complaint contains allegations that TSP and TSM assigned insurance adjuster Ms. Negrón to manage Plaintiff's building damages claims. ECF No. 1, at 8, ¶ 48. The complaint also includes allegations that TSP and TSM engaged the services of Adjusters Inc. (external adjustors), hired engineer Mr. Cora as an expert to evaluate the building damages claim, and assigned CPA Mr. Carranza to handle the business interruption claim.[4] Id. at 12, 14, 19, ¶¶ 76, 90, 123. Plaintiff also alleges in the complaint that it received a response from the TSP and TSM legal representative, Mr. Reyero, regarding Plaintiff's request for investigation through OCI. Id. at 12, ¶ 80. Furthermore, Plaintiff alleges that it received a response from TSP and TSM Claims Vice President Mr. Polanco that a new engineer would be assigned to analyze its building damages claim. Id. at 13-14, ¶¶ 86, 91. Lastly, Plaintiff alleges that TSP and TSM advised in June 2019 that it suffered no damages related to its business interruption claim. Id. at 20, ¶ 134.

These aforementioned allegations in the complaint, taken together, give rise to a plausible inference that the corporate separateness between TSP and TSM was not observed. While TSM did not issue the Policy, Plaintiff has set forth specific allegations that TSM—and not only TSP—was actively and directly involved in assigning insurance adjusters, hiring experts, responding to Plaintiff's inquiries, and making determinations regarding Plaintiff's claims. Whether these allegations are true or supported by the evidence, and also sufficient within the context of all the pertinent evidence to lead to the piercing of the corporate veil, however, is another matter to be determined at a later stage in the proceedings in a motion for summary judgment or at trial. Nonetheless, at this juncture, taking all non-conclusory allegations contained in the pleadings as true and drawing all reasonable inferences in Plaintiff's favor, it would be premature to grant TSM's request for the complaint to be dismissed.

---

[4] In contrast, the complaint specifically alleges that Mr. Esquilín was TSP's expert to evaluate Plaintiff's business personal property claim. ECF No. 1, at 17, ¶ 114.

## V.     Conclusion

For the foregoing reasons, TSM's motion for judgment on the pleadings erroneously labeled as a motion to dismiss (ECF No. 40) is DENIED. Plaintiff's motion to strike TSM's motion to dismiss (ECF No. 42) is DENIED. Plaintiff's request for attorney's fees related to the opposition that it filed to the motion to dismiss is also DENIED.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 13th day of May, 2021.

s/Marcos E. López
U.S. Magistrate Judge
